**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Cawley, et al., | No.  CV-22-00823-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| American Financial Security Life Insurance Company, et al., | |
| Defendants. | |

Before the Court are Plaintiffs' and Defendant's pending motions in limine and responses, which are listed by title and document number below.

**Plaintiffs' Pending Motions in Limine (7):**

- o <u>MIL No. 1</u>: To exclude evidence, testimony, or inquiries regarding the portion of Armpriester's Letter referring to Covid and AZDIFI's response. (Doc. 171). Defendant's Response (Doc. 203).
- o <u>MIL No. 2</u>: To exclude evidence, testimony, or inquiries regarding the 30-day waiting provision. (Doc. 172). Defendant's Response (Doc. 204).
- o <u>MIL No. 4</u>: To exclude evidence, testimony, or inquiries regarding AZDIFI's receipt and approval of AFSLIC's Policy. (Doc. 178). Defendant's Response (Doc. 206).
- o <u>MIL No. 5</u>: To preclude Christopher Martin from testifying about the conspicuousness of language and/or disclaimers in the subject insurance documents. (Doc. 202). Defendant's Response (Doc. 207).
- o <u>MIL No. 6</u>: To preclude Christopher Martin from testifying about the legal status of the relationship between the

individuals who sold the subject short term health insurance plan and the purchaser of the plan. (Doc. 180). Defendant's Response (Doc. 208).

- o <u>MIL No. 7</u>: To preclude Christopher Martin from testifying about whether Plaintiffs' expectations of coverage were reasonable. (Doc. 181). Defendant's Response (Doc. 209).
- o <u>MIL No. 8</u>: To preclude Christopher Martin from testifying as to what a reasonable consumer would or would not do. (Doc. 184). Defendant's Response (Doc. 210).

**Defendant's Pending Motions in Limine (15):**

- o <u>MIL No. 1</u>: To exclude testimony, argument, or evidence related to Plaintiffs' sale of their franchised business. (Doc. 166). Plaintiffs' Response (Doc. 212).
- o <u>MIL No. 2</u>: To exclude testimony, argument, or evidence related to the sale of Plaintiffs' house. (Doc. 167). Plaintiffs' Response (Doc. 213).
- o <u>MIL No. 3</u>: To exclude testimony, argument, or evidence related to Plaintiffs' claim that Plaintiff Gary Cawley's credit was damaged. (Doc. 168). Plaintiffs' Response (Doc. 214).
- o <u>MIL No. 5</u>: To preclude introduction of certain brochures as evidence at trial. (Doc. 170). Plaintiffs' Response (Doc. 216).
- o <u>MIL No. 6</u>: To exclude testimony, argument, or evidence related to the "Traditional Plan." (Doc. 173). Plaintiffs' Response (Doc. 217).
- o <u>MIL No. 7</u>: To exclude testimony, argument, or evidence related to other consumer complaints as to IBA or AFSLIC. (Doc. 174). Plaintiffs' Response (Doc. 219).
- o <u>MIL No. 8</u>: To exclude testimony, argument, or evidence related to Plaintiffs' argument that they did not receive the benefits of the policy as written. (Doc. 175). Plaintiffs' Response (Doc. 220).
- o <u>MIL No. 9</u>: To preclude introduction of Plaintiffs' bank and credit card statements as evidence at trial. (Doc. 176). Plaintiffs' Response (Doc. 221).
- o <u>MIL No. 10</u>: To preclude introduction of AFS STM SCRIPT 416 (produced by Plaintiffs as CAWLEY000974-980) as evidence at trial. (Doc. 182). Plaintiffs' Response (Doc. 222).
- o <u>MIL No. 11</u>: To preclude introduction of Plaintiffs' "DES Application" as evidence at trial. (Doc. 183). Plaintiffs' Response (Doc. 223).

- o <u>MIL No. 12</u>: To preclude introduction of evidence and argument relating to certain administrative orders. (Doc. 190). Plaintiffs' Response (Doc. 224).
- o <u>MIL No. 13</u>: To preclude introduction of evidence and argument related to other proceedings against AFSLIC. (Doc. 191). Plaintiffs' Response (Doc. 225).
- o <u>MIL No. 14</u>: To preclude introduction of certain deposition testimony of Bradley Burd at trial. (Doc. 193).
- o <u>MIL No. 15</u>: To preclude introduction of certain deposition testimony of Michael Fowler at trial. (Doc. 194).
- o <u>MIL No. 16</u>: To preclude introduction of certain deposition testimony of Jacob Armpriester at trial. (Doc. 195). Plaintiffs' Response to MILs 14–16 (Doc. 226).[1]

The Court heard oral argument on these motions during the May 28, 2025 Final Pretrial Conference (ME 228), and it issued bench orders on Plaintiffs' Motions in Limine Nos. 3 and 9, as well as Defendant's Motion in Limine No. 4. It took the remaining motions in limine under advisement.

Also before the Court are Defendant's fully briefed *Daubert* motions to exclude the testimony of Plaintiffs' experts William Warfel (Docs. 187, 230, 233) and Mark McKinnon (Docs. 188, 231, 234).

As to the two *Daubert* motions and the remaining motions in limine, the Court now rules as follows.

## I.    MOTIONS IN LIMINE

### A.    Legal Standards

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area," *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009), and "the practice has developed pursuant to the district court's inherent authority to manage the course of trials," *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "[A] ruling on a

---

[1] Because Defendant's Motions in Limine 14–16 are lengthy objections to specific lines in various deposition transcripts, Plaintiffs did not respond specifically to each objection, but they "request that the Court deny Defendant's Motions in Limine Nos. 14–16 and allow for the parties to fully be able to object to and respond to objections to deposition designations at a later date." (Doc. 226 at 2).

motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (citation omitted). A motion in limine "must identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx), 2010 U.S. Dist. LEXIS 141013, at *3 (C.D. Cal. May 19, 2010).

Evidence may not be admitted at trial unless it is relevant, as defined by Rule 401 of the Federal Rules of Evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The particular facts of the case determine the relevancy of a piece of evidence. *See* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.04 [2] [a] (Joseph M. McLaughlin ed., 2d ed. 2000) ("Relevance is not inherent in any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.").

Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question. *See Old Chief v. United States*, 519 U.S. 172, 182–85 (1997). "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

**B.    DISCUSSION**

**1.    Plaintiffs' Motion in Limine No. 1 (Doc. 171). Defendant's Response (Doc. 203).**

Plaintiffs seek an order excluding "evidence, testimony, or inquiries regarding the

4

portion of Armpriester's October 5, 2021, letter referring to Covid (at AZDOI_000029-31) and AZDIFI's response (at CAWLEY000582-586 and AZDOI_000073-74)" as inadmissible hearsay, irrelevant, and prejudicial. (Doc. 171 at 3).

Defendant argues that the letter is not hearsay because it is "not being offered for the truth of its contents." (Doc. 203 at 3). Defendant also argues that "AFSLIC's response letter, the DOI's conclusions, and the remainder of the DOI's file are admissible [under] 803(8)(iii) as a public record . . . ." (*Id.*). It is unclear what purpose Defendant intends to introduce these exhibits for if not to prove that the delay in claims processing was due to Covid or that Plaintiffs' claims "were adjudicated in accordance with the written terms of the policy." (*Id.* at 4 (emphasis omitted)). They further argue that "[t]he DOI's investigation is also relevant to whether AFSLIC acted in bad faith." (*Id.*).

First, this Court agrees with Plaintiffs that the records are irrelevant to their breach of contract arguments based on the reasonable expectations doctrine. (*See* Doc. 171 at 3). Furthermore, it agrees that there is a risk that a jury would "substitute AZDIFI's determination that the claims were fully paid (under the boiler plate terms) for their own." (*Id.*). It is critical that the jury gets to decide whether Defendant breached its contract with Plaintiffs based on their reasonable expectations regarding coverage and whether Defendant acted in bad faith. And to the extent that Defendant wishes to argue that Covid caused delays in claim processing, it may elicit direct testimony on the stand or introduce business records to that effect rather than relying on Mr. Armpriester's statement in the 2021 letter.

Accordingly, Plaintiffs' Motion in Limine No. 1 will be granted.

**2.    Plaintiffs' Motion in Limine No. 2 (Doc. 172). Defendant's Response (Doc. 204).**

Plaintiffs ask the Court "to preclude evidence that the subject Short Term Medical insurance policy ("STM Policy") contains a 30-day waiting period before coverage for cancer treatment becomes effective." (Doc. 172 at 1). They argue that evidence of the 30-day period is irrelevant to Plaintiffs' bad faith claims because it is a post hoc rationale for

American Financial's denial of coverage and because American Financial has already waived the argument. (*See id.* at 2–3).

American Financial counters that the fact that it "has never attempted to enforce the waiting period by denying the claims in their entirety goes directly to the reasonableness of AFSLIC's conduct." (Doc. 204 at 3). It states that it "simply seeks to introduce the 30-day waiting provision as evidence of its good faith and reasonable conduct and not as a basis to deny coverage." (*Id.*).

The Court agrees that evidence regarding the 30-day waiting period is relevant to Defendant's defense against the bad faith claim, and that Defendant raised the issue in both its Answer and Motion for Summary Judgment such that the argument has not been waived. (*See id.* at 2). Accordingly, Plaintiffs' Motion in Limine No. 2 will be denied.

**3.      Plaintiffs' Motion in Limine No. 4 (Doc. 178). Defendant's Response (Doc. 206).**

Plaintiffs request that "evidence of the subject health insurance forms being submitted to and/or approved by the Arizona Department of Insurance & Financial Institutions ("AZDIFI")" be excluded at trial as irrelevant, based on hearsay, and minimally probative compared to the dangers of confusion or unfair prejudice. (*See* Doc. 178 at 1–3). Specifically, as to the hearsay issue, they argue that American Financial has not submitted any documentation regarding the alleged approval of the policy documents; instead, they offer the testimony of American Financial's compliance director, who "testified that American Financial's regulatory attorney, Brian Camling, would have submitted the forms for approval" based on what Mr. Camling told him. (*Id.* at 2).

The Court agrees that Mr. Armpriester's proposed testimony regarding what Mr. Camling may have told him about the policy approval would constitute hearsay. Mr. Armpriester would be testifying that American Financial's policy documents were indeed approved by the AZDIFI based only on what someone else told him, not based on his own direct knowledge of the matter. That is definitional hearsay, and the present sense impression exception is completely inapposite, contrary to Defendant's argument. (*See*

Doc. 206 at 3–4).

The information itself—that American Financial's policy forms were approved by AZDIFI—may be relevant to American Financial's defense against the breach of contract claim. Thus, Plaintiffs' motion will be denied to the extend it seeks to exclude *any* evidence or testimony about the alleged approval of forms. However, because Mr. Armpriester lacks personal knowledge regarding those approvals, he will be precluded from testifying as to what he knows based only on what the company's regulatory attorney told him. He will not be precluded to speaking more generally on his knowledge of the approval process based on his personal knowledge and experience in the industry. The Motion will therefore be granted in part and denied in part.

**4.      Plaintiffs' Motion in Limine No. 5 (Doc. 202). Defendant's Response (Doc. 207).**

American Financial's insurance practices expert, Christopher Martin, stated in his Initial Expert Report that he may testify regarding "conspicuous disclaimers on enrollment and plan documents to alert consumers to exclusions or limitations on coverage." (Doc. 202-1 at 5). Plaintiffs argue that any such testimony regarding the conspicuousness of warnings in Plaintiffs' insurance policy should be excluded, as the obviousness of warning is an issue that a juror "can readily determine" from a lay perspective without need of expert testimony.

It is true that under the Federal Rule of Evidence, expert testimony is only necessary if a fact at issue requires "scientific, technical, or other specialized knowledge" to understand. Fed. R. Evid. 701, 702. However, this Court agrees with Defendant's response that "[t]estimony about customs and practices in the insurance industry with respect to the use of disclaimers, including what is considered a 'conspicuous disclaimer' pursuant to industry standards, and about whether AFSLIC's disclaimers complied with industry standards, is appropriate expert testimony because it is based on the specialized knowledge and expertise described in Mr. Martin's Initial Report." (Doc. 207 at 3). The jury remains the finder of fact regarding whether any warnings on the insurance documents were

obvious or conspicuous, but Mr. Martin may properly testify as to industry standards for the kinds of warnings that are considered "conspicuous" in the health insurance industry.

Accordingly, Plaintiffs' motion will be denied.

### 5. Plaintiffs' Motion in Limine No. 6 (Doc. 180). Defendant's Response (Doc. 208).

Plaintiffs also request that Christopher Martin be precluded "from testifying as to the legal status of the relationship between the individuals who sold the subject short term health insurance plan and the purchaser of the plan (Plaintiff Pam Cawley)." (Doc. 180 at 1). Specifically, they argue that "whether there is an agency relationship between American Financial and Vaval/Bowen is a factual question for the jury that is not a proper subject of expert testimony." (*Id.* at 2).

American Financial, in response, "agrees that the conclusion as to whether Ms. Vaval and/or Mr. Bowen were agents of AFSLIC, such that AFSLIC may be bound by or liable for either individual's statements, is a legal issue that neither party's expert should be allowed to opine on." (Doc. 208 at 3). However, it argues that if the Court allows Plaintiffs' expert, William Warfel, to testify about this legal relationship, Mr. Martin should be permitted to do so as well.

As discussed below with respect to Defendant's *Daubert* motion (Doc. 187), Mr. Warfel will be precluded from offering any improper opinions about issues of law. Because Defendant agrees that neither party's expert should be allowed to opine on legal conclusions, Plaintiffs' motion will be granted.

### 6. Plaintiffs' Motion in Limine No. 7 (Doc. 181). Defendant's Response (Doc. 209).

Related to Plaintiffs' Motion in Limine No. 6, Plaintiffs also request that Defendant's expert Christopher Martin be precluded from testifying about whether Plaintiffs' expectations of coverage under the subject short term health insurance plan were reasonable. (Doc. 181 at 1). They argue that "[t]he reasonableness about what the Cawleys believed the plan covered or the reasonableness of their expectations is a matter that does

not require expert testimony as it is well within the jury's own knowledge and experience." (*Id.* at 3). Defendant "agrees that the question whether Plaintiffs had a reasonable expectation of coverage is a factual question for the jury, which will not be aided by the testimony of either party's expert." (Doc. 209 at 4). Defendant further states that "[t]o the extent the Court grants AFSLIC's Motion to Exclude the Testimony of William Warfel, in its entirety or as applied to Mr. Warfel's improper legal opinions as to the reasonableness of Plaintiffs' expectations, AFSLIC will not seek to introduce and therefore does not object to the exclusion of Mr. Martin's legal conclusions on the same topic." (*Id.*). Because this Court will preclude Mr. Warfel from offering any improper opinions about issues of law, Plaintiffs' motion will be granted. Neither party's experts may offer improper opinions about the reasonableness of Plaintiffs' expectations.

### 7.    Plaintiffs' Motion in Limine No. 8 (Doc. 184). Defendant's Response (Doc. 210).

Plaintiffs seek to preclude Defendant's expert Mr. Martin "from testifying as to the reasonableness of consumer's conduct, including the Plaintiffs' conduct, when purchasing insurance." (Doc. 184 at 1). As with the prior two motions, Defendant does not oppose this motion so long as Plaintiffs' own expert is not allowed to opine on this subject. (Doc. 210 at 4). Accordingly, the motion will be granted. Neither party's expert witnesses may opine on the reasonableness of the Cawleys' actions when reading/reviewing the STMP, as it is for the jury to determine whether their conduct was reasonable.

### 8.    Defendant's Motion in Limine No. 1 (Doc. 166). Plaintiffs' Response (Doc. 212).

Defendant seeks to exclude any evidence, testimony, or argument, regarding Plaintiffs' franchised business, the sale of their business, and the reasons or consequences for that sale as it pertains to Plaintiffs' alleged damages. (Doc. 166 at 1–2). It argues that Plaintiffs "have not produced any admissible evidence establishing that they sold the B+B Store as a result of any action by American Financial. Nor have they provided any reliable business valuation showing any loss from the sale of the B+B." (*Id.* at 2). Defendant's

disputes with Plaintiffs' alleged damages related to the sale of their franchise business are primarily factual ones, and such factual questions are left to the province of the jury. It is for the jury to decide whether Plaintiffs sold the business due to mounting medical bills, and whether those medical bills were caused by, or not caused by, a breach of contract or bad faith on the part of Defendant. It is also for the jury to decide the extent of any losses caused by the sale of the business. Accordingly, Defendant's motion will be denied.

**9.    Defendant's Motion in Limine No. 2 (Doc. 167). Plaintiffs' Response (Doc. 213).**

In a similar vein as their first motion, Defendant also requests that the Court preclude Plaintiffs from introducing evidence, testimony, or argument "regarding alleged damages incurred because of the sale of their house, including unsupported reasons for and speculative consequences of the sale." (Doc. 167 at 2). For the same reasons as the above motion, this motion will also be denied. It is for the jury to evaluate Plaintiffs' damages arguments at trial.

**10.    Defendant's Motion in Limine No. 3 (Doc. 168). Plaintiffs' Response (Doc. 214).**

Defendant seeks to exclude evidence, testimony, and argument regarding damage to Plaintiff Gary Cawley's credit score. (Doc. 168 at 2). It argues that there is no causal connection between American Financial's actions and any damage to Plaintiff's credit score, given that American Financial was not the creditor on either of the two medical bills in collection. (*Id.* at 3). Second, it argues that "Plaintiffs have failed to show any damage to Mr. Cawley's credit score outside of Mr. Cawley's normal credit score range." (*Id.*). Finally, it argues that even if his credit score was reduced, his testimony does not establish that he suffered any resulting damage. (*Id.*).

Plaintiffs counter that American Financial's first argument is "a red herring" because American Financial itself "delayed and denied payment of medical bills, resulting in those creditors reporting the unpaid debts to agencies." (Doc. 214 at 2). They also argue that there is both evidence that will be presented at trial that Mr. Cawley's credit score was

damaged and that he suffered actual harm as a result, such as being unable to secure an auto loan. (*Id.*).

As with the previous two motions, Defendant's arguments are unavailing. Plaintiffs may present evidence at trial regarding alleged damage to Mr. Cawley's credit score, and the jury will weigh whether, and to what extent, to attribute any such damage to American Financial. Accordingly, the motion will be denied.

**11.    Defendant's Motion in Limine No. 5 (Doc. 170). Plaintiffs' Response (Doc. 216).**

Defendant seeks exclusion of three brochures Plaintiffs seek to admit to show "specific information regarding the amount of coverage for benefits under American Financial's 'Traditional' plan as compared to its 'Lite' plan." (Doc. 216 at 1). Plaintiffs argue that the existence of the "Traditional" as opposed to "Lite" plan is relevant to Plaintiffs' claims because "Pam Cawley wanted to purchase, and believed she purchased, something more akin to the 'Traditional' plans in that the 'Traditional' plans had better coverage." (*Id.* at 1–2). Plaintiffs admit that "she had not seen any of the subject brochures." (*Id.* at 2).

Plaintiffs have failed to establish the relevance of these third-party brochures to the facts and claims at issue here, which is evident from the fact that Mrs. Cawley herself had never seen these brochures and simply wanted something "*akin*" to a "Traditional" plan. Plaintiffs will have ample opportunity to present evidence, testimony, and arguments regarding the Cawley's expectations of the insurance plan they were purchasing without resorting to irrelevant and unauthenticated third-party brochures. Accordingly, Defendant's motion will be granted.

**12.    Defendant's Motion in Limine No. 6 (Doc. 173). Plaintiffs' Response (Doc. 217).**

Related to the above motion, Defendant more broadly seeks to preclude Plaintiffs "from introducing at trial any evidence or testimony about the 'Traditional Plan,' because Plaintiffs have not produced a witness with personal knowledge regarding the plan, nor is

there any evidence to suggest that Plaintiffs were ever aware of let alone intended to purchase a 'Traditional Plan.' At best, the only 'evidence' of the Traditional Plan are the Brochures which are themselves inadmissible for the reasons set forth in Motion in Limine No. 5." (Doc. 173 at 2). For the same reasons Defendant's Motion in Limine No. 5 was granted, this motion will be granted as well. Evidence of the "Traditional Plan" is irrelevant to the case at hand.

### 13. Defendant's Motion in Limine No. 7 (Doc. 174). Plaintiffs' Response (Doc. 219).

Defendant seeks to preclude Plaintiffs from introducing third-party reviews of IBA from the Better Business Bureau, arguing that they are irrelevant, inadmissible hearsay, present a risk of undue prejudice, and are improper "other acts" evidence under Federal Rule of Evidence 404(b). (Doc. 174 at 2). Plaintiffs argue that the complaints are relevant because they mirror the Cawleys' experience with IBA and American Financial. (Doc. 219 at 1). Furthermore, at the FPTC, Plaintiffs argued that the consumer complaints are not hearsay "because they are offered to impeach IBA and AFSLIC's claim that they were delayed in their processing because of COVID." (Draft Hr'g Tr. 18:4–6).

To the extent that Plaintiffs wish to introduce the Better Business Bureau complaints to show that other customers suffered similar difficulties with American Financial and IBA, including "that claims were improperly denied or delayed as pre-existing, that providers and consumers-insureds could never get ahold of anyone at the companies' customer service departments to answer questions, calls getting disconnected or hung up on, being told that claims were never received," (Doc. 219 at 1), Plaintiffs are seeking for the complaints to be admitted for the truth of the matter asserted. This constitutes impermissible hearsay, and the complaints may not be admitted for this purpose. *Cf. United States v. Chavis*, 772 F.2d 100, 104–05 (5th Cir. 1985) (finding that Better Business Bureau complaints and records were admissible because they were *not* being admitted to prove the truth of the matter asserted, but rather to show that defendants were notified of the complaints).

As to Plaintiffs' impeachment argument, at the FPTC, they argued that the Better Business Bureau complaints lack any mention of IBA telling consumers that processing delays were due to Covid, which they say impeaches IBA and American Financial's claim that delays in processing the Cawleys' claims were due to Covid. (Draft Hr'g Tr. 17:11–18:7). This argument is unavailing. It is unclear how the mere fact that these complaints (which are themselves hearsay) do not contain any mention of Covid constitutes impeachment evidence that could refute Defendant's position that Covid caused claims-processing delays.

Accordingly, Defendant's Motion will be granted. Plaintiffs may not introduce third-party reviews of IBA from the Better Business Bureau into evidence at trial.

### 14.    Defendant's Motion in Limine No. 8 (Doc. 175). Plaintiffs' Response (Doc. 220).

Defendant requests that Plaintiffs be judicially estopped from arguing "that Plaintiffs did not receive the benefits provided by the written terms of the short term life insurance policy they purchased." (Doc. 175 at 2). It argues that Plaintiffs have already conceded that "all benefits under the policy as written were paid out to them," so they cannot now take an inconsistent position at this stage in the litigation. (*Id.*) Defendant further argues that because "there is no legal or factual basis for Plaintiffs to argue that they did not receive the full benefits under the written terms of the STMP policy, any such testimony, evidence, or argument arguing as such is unduly prejudicial under Rule 403." (*Id.*).

Plaintiffs dispute ever having made such a concession that all benefits under the policy were paid out to them. They agree that "Gary Cawley's medical bills for cancer were paid in amounts consistent with the written terms of the Certificate of Insurance ('COI')." (Doc. 220 at 1). However, they contend that "Plaintiffs do not concede that the benefits were paid consistently with what should be considered the 'policy' or 'plan' because . . . the definition of the 'policy' or 'plan' or 'contract' includes the Application, and the Application is inconsistent with the 'fine print' in the COI." (*Id.*). In other words, the parties

dispute the definition of the insurance "policy," whether it includes both the COI *and* Plaintiffs' insurance application, or if it only includes the COI. Additionally, Defendant argues that the terms of the COI and the Application are not inconsistent. (Draft Hr'g Tr. 21:25–22:1).

This Court agrees with Plaintiffs that "[t]he fact that Plaintiffs did not specifically raise this argument about the Applications becoming part of the Policy in the body of their Responses to the Motions for Summary Judgment should not preclude them from raising the argument at trial." (Doc. 220 at 3). When this Court stated that American Financial paid "all benefits under the policy as written," it was based on the fact that the parties did not (and do not) dispute that benefits were paid out in accordance with the terms of the COI. (Doc. 160 at 6). However, if Plaintiffs wish to present an argument to the jury that the policy Application conflicts with the COI, they may do so, just as Defendant may rebut that argument by presenting evidence to support their contention that the terms of the COI and the Application are consistent. The Court does not find that Plaintiffs are judicially estopped from making this argument, nor that presenting such argument would be unduly prejudicial under Rule 403.

Defendant's Motion will therefore be denied.

### 15.    Defendant's Motion in Limine No. 9 (Doc. 176). Plaintiffs' Response (Doc. 221).

Defendant seeks exclusion of certain financial records of Plaintiffs' "including but not limited to bank statements, credit card statements, and other similar financial documents." (Doc. 176 at 2). Plaintiffs counter that the evidence, such as bank statements, "document payments made to various health care providers," which goes toward the issue of "the Cawleys having to pay for medical bills they reasonably expected American Financial to be paying." (Doc. 221 at 2). Because Plaintiffs are seeking damages based on medical bills they did not expect to have to pay, evidence of those payments is directly relevant to Plaintiffs' ability to fully present their case and allow a jury to determine the amount, if any, of damages. The Court finds that the probative value of this evidence is not

outweighed by a risk of undue prejudice. Accordingly, Defendant's motion will be denied.

**16.    Defendant's Motion in Limine No. 10 (Doc. 182). Plaintiffs' Response (Doc. 222).**

Defendant asks the Court to preclude Plaintiffs "from introducing at trial the document AFS STM SCRIPT 416 produced by Plaintiffs as CAWLEY000974-980 . . . and any other evidence, testimony, or argument about the Script, as they "have failed to authenticate or lay foundation for testimony about the Script, which consists of irrelevant hearsay that would only serve to confuse and mislead the jury." (Doc. 182 at 2). Plaintiffs argue that the Script, which was obtained through an online database, (1) shows that American Financial approved of agents describing its health plans as "paying benefits similar to that of a major medical insurance plan," similar to how Vaval mischaracterized Mrs. Cawley's plan when selling it to her over the phone; and (2) it "demonstrates American Financial's ability to control sales agents, which goes to the issue of the nature of the relationship between American Financial and sales agent Vaval." (Doc. 222 at 2–3). They also state that they can call the custodian of records to authenticate the Script at trial if necessary. (*Id.* at 3).

As to Plaintiffs' first argument, which is that the Script shows that American Financial approved of agents describing its health plans as "paying benefits similar to that of a major medical insurance plan," Plaintiffs have failed to demonstrate the Script's relevance for this purpose. Plaintiffs possess, and will likely present, the transcript of the actual conversation that occurred between Vaval and Mrs. Cawley. It is *this* transcript that is relevant to Plaintiffs' breach of contract claim, not some other Script that was obtained online but never actually read to the Cawleys.

However, the Court agrees that the Script may be relevant to American Financial's ability to control sales agents and the nature of its relationship to those sales agents. Before introducing the Script, Plaintiffs will need to authenticate and lay foundation for the document. Accordingly, Defendant's Motion will be granted in part and denied in part. If Plaintiffs properly authenticate and lay foundation for the document, they may introduce

AFS STM SCRIPT 416 (CAWLEY000974-980) for the limited purpose of demonstrating American Financial's ability to control sales agents.

### 17. Defendant's Motion in Limine No. 11 (Doc. 183). Plaintiffs' Response (Doc. 223).

In this motion, Defendant seeks to preclude the introduction of certain documents "produced as CAWLEY002336-2356 (the 'DES Documents')," which include "correspondence dated January 4 and 5, 2021 related to an application for Nutrition Assistance, . . . correspondence from DES to the Cawleys dated December 31, 2020 listing additional information needed in order for DES 'to decide if you can qualify for the programs you have applied for,' . . . and related notices," as well as pay stub printouts showing Mrs. Cawley's earnings from Walmart for November and December 2020. (Doc. 183 at 2). The documents do not include any actual application submitted by the Cawleys to the Arizona Department of Economic Security ("DES") (Doc. 223 at 2).

Plaintiffs explain that after selling their business, they were not earning income "and therefore applied for health insurance with the Arizona Department of Economic Security (DES), but they were denied. Plaintiffs intend to introduce evidence that they applied to go on the DES' health care plan, known as AHCCCS, for health insurance in late 2020." (*Id.* at 1–2). They further state that "[t]he DES documents were documents that Plaintiffs received after being denied for AHCCCS as the DES then offered them other benefits, specifically, the Nutrition Program, which Plaintiffs had not sought and did not need." (*Id.* at 2). While Defendant argues that these documents are irrelevant under Rule 401, Plaintiffs argue that the documents provide evidence that the Cawleys applied for AHCCCS health insurance, and that this fact is relevant "because it was a natural consequence of them having to sell their business which they concluded they needed to do because American Financial was paying so little of Gary's medical bills, and as a result of that loss of income, not having funds to purchase a private health care policy." (*Id.*).

Plaintiffs' argument here is rather attenuated. Defendant is right that the documents do not include an application for benefits themselves, but simply correspondence from DES

sent to the Cawleys in response to such an application. This decreases the relevance of the documents and increases the likelihood that they could confuse a jury. Additionally, it is unclear if Plaintiffs are attempting to introduce these documents as part of their damages arguments, and if they are, it is unclear how choosing to apply for AHCCCS health insurance constitutes any harm done to Plaintiffs by Defendant. Ultimately, Plaintiffs have not demonstrated the relevance of these documents to the case at hand, and given the risk of confusion of the issues, undue delay, or a waste of time by presenting this evidence to a jury, Defendant's motion will be granted.

**18.    Defendant's Motion in Limine No. 12 (Doc. 190). Plaintiffs' Response (Doc. 224).**

Defendant seeks exclusion of the Arizona Department of Insurance and Financial Institutions Consent Order produced by Plaintiffs as CAWLEY000574-581 (the "DIFI Order") and the Missouri Department of Commerce & Insurance Order and associated Report of Financial Examination of AFSLIC produced by Plaintiffs as CAWLEY000311-332 (the "DCI Order"). (Doc. 190 at 2). The DIFI Order "relates to an investigation conducted by DIFI in response to a consumer complaint" and imposed a penalty for American Financial's "purported delays in responding to DIFI's requests for information needed to complete its investigation." (*Id.*). The DCI Order relates to American Financial's finances and corporate dealings. (*Id.*). Defendant argues that these orders are irrelevant and unduly prejudicial, as "the jury may interpret them as evidence of AFSLIC's culpability—which they are not." (*Id.* at 4).

Plaintiffs argue that the DIFI Order "is relevant because it contains evidence consistent with the Better Business Bureau record of consumer complaints that appears in the Cawley's AZDIFI file, i.e., complaints of delay and non-payment by American Financial." (Doc. 224 at 1). Consistent with this Court's granting of Defendant's Motion in Limine No. 7 (Doc. 174) above, which precludes Plaintiffs from introducing third-party reviews of IBA from the Better Business Bureau into evidence at trial, Plaintiffs shall similarly not be allowed to present evidence of the DIFI Order at trial. As Defendant

explains, "[t]he DIFI Order does not describe or address the facts of the underlying consumer complaint but instead focuses on, and imposes a penalty based on, AFSLIC's purported delays in responding to DIFI's requests for information needed to complete its investigation." (Doc. 190 at 2). Plaintiffs may not use the DIFI Order as a backdoor to introduce evidence of a consumer complaint against American Financial; furthermore, this Court agrees with Defendant that introducing the DIFI Order risks undue prejudice to the Defendant, as it could lead to an improper inference of wrongdoing, and it also risks confusion of the issues by the jury. (*See id.* at 3–4). Plaintiffs will not be allowed to present evidence of the DIFI Order at trial.

However, Plaintiffs argue that they should be permitted to introduce the DCI Order because it provides "information relating to the common ownership between American Financial and its third party claims administrator International Benefits Administrators," which they argue is relevant because "it shows a lack of independence between American Financial and IBA." (Doc. 224 at 1–2). They argue that the "close ownership relationship" between American Financial and IBA "goes directly to American Financials' [sic] duty of good faith and fair dealing to Plaintiffs," as a jury could "infer that IBA would not pay medical claims, would not respond to insureds' pleas for help and explanation of coverage, because such payments would mean, at the end of the day, less profit for the Sonnenbergs, who owned 94% of American Financial and 100% of IBA." (*Id.* at 2). They state that they do not offer the DCI Order as evidence of any sanction, "and such can be redacted or fully removed." (*Id.*).

Plaintiffs are entitled to present evidence on their bad faith claim for the jury. The DCI Order may therefore be admitted for the limited purpose of showing common ownership between American Financial and IBA; however, Plaintiffs are instructed to present only the portions of the DCI Order that are relevant to this purpose and to redact all other portions of the Order.

19.     **Defendant's Motion in Limine No. 13 (Doc. 191). Plaintiffs' Response (Doc. 225).**

In this motion, Defendant states that Plaintiffs "have indicated their intent to introduce or attempt to elicit testimony about unspecified Other Proceedings involving AFSLIC or IBA and related allegations, findings, and outcomes." (Doc. 191 at 2). However, Plaintiffs respond that they "are unclear as to exactly what evidence Defendant means," and that "Plaintiffs have only listed exhibits from Arizona and Missouri Departments of Insurance which was addressed in Defendant's Motion in Limine No. 12." (Doc. 225 at 1). Because this motion appears duplicative of Defendant's Motion in Limine No. 12, and it is unclear what else Defendant is asking this Court to exclude, the motion will be denied.

20.     **Defendant's Motion in Limine No. 14 (Doc. 193), No. 15 (Doc. 194), and No. 16 (Doc. 195). Plaintiffs' Response. (Doc. 226).**

Defendant's last three motions in limine all detail deposition testimony that it seeks to prevent being read into evidence at trial. As discussed during the Final Pretrial Conference, this Court generally waits for the trial to develop before ruling on various requests to exclude portions of depositions, as the evidence that is likely to be introduced at trial may change. Accordingly, these three motions will be denied without prejudice. Defendant may raise particularized objections at trial if and when Plaintiffs attempt to introduce any disputed portions of deposition testimony.

## II.     *Daubert* Motions

### A.     Legal Standard

Federal Rule of Evidence ("FRE") 702 permits parties to file motions to exclude to ensure the relevance and reliability of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999). FRE 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule imposes on the trial courts a gatekeeping obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."). "Whether the expert is appropriately qualified, whether her testimony is relevant, and whether her testimony is reliable are all distinct inquiries under Rule 702." *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2019 WL 2080143, at *1 (D. Ariz. May 10, 2019). The proponent of the expert evidence has the burden of proving the expert's testimony is admissible under FRE 702 and *Daubert*. *Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 989 (D. Ariz. 2000).

## B.    Motion to Exclude Testimony of Plaintiffs' Expert Witness William Warfel

Defendant proffers four primary arguments for the exclusion of Plaintiffs' insurance expert, Mr. William Warfel: (1) he lacks the requisite knowledge, experience, or expertise in short-term medical policies; (2) his testimony should be excluded to the extent it amounts to conclusions on issues of law; (3) his opinion is unreliable, contradictory, and speculative; and (4) to the extent his reports or testimony are admitted, his opinion on undisclosed topics should be excluded. (Doc. 187 at 10–18). It therefore requests that Mr. Warfel's testimony be excluded in its entirety. (*Id.* at 2).

The Court will not grant Defendant's *Daubert* motion in its entirety, but it will set

forth several limiting parameters on Mr. Warfel's proposed testimony.

### 1.    Expertise in Short-Term Medical Policies

Defendant's first argument is that "Mr. Warfel does not have basic knowledge of, much less experience with or training or education concerning medical insurance policies, whether comprehensive or short-term, and his generic knowledge and experience with respect to insurance is not enough to qualify him as an expert in this case." (*Id.* at 10). Specifically, they note that Mr. Warfel had never seen a short-term medical policy before this case, could not identify any other carriers of short-term medical insurance, does not include any discussion of short-term medical policies in the Health Insurance course he teaches, and has limited to no experience with the handling of claims under medical insurance plans. (*Id.* at 11–12).

Plaintiffs argue that "general experience in an industry can qualify an expert if the opinions are grounded in relevant knowledge." (Doc. 230 at 4 (citing *United States v. Garcia*, 7 F.3d 885, 889 (9th Cir. 1993))). However, the Court has some reservations about Plaintiffs' contention that Mr. Warfel's "opinions regarding the standard practices for disclosure of policy terms, handling of claims, and expectations of insureds draw on this broader base and are applicable to STM policies and are thus admissible." (Doc. 230 at 4). It is true that "[a] witness's knowledge of a general professional field may qualify him or her to testify about a specific practice within that field." *11333 Inc. v. Certain Underwriters at Lloyd's, London*, 261 F. Supp. 3d 1003, 1015 (D. Ariz. 2017). And in his Initial Report, Mr. Warfel states that he has "taught Health Insurance at Indiana State University since . . . . 1990, meaning I am very familiar with individual medical expense insurance, short term transition policies, and policies sold pursuant to the Affordable Care Act." (Doc. 187-1 at 19). The proponent of expert evidence has the burden of proving the expert's testimony is admissible under FRE 702 and *Daubert*. *Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 989 (D. Ariz. 2000). It *may* be true that Mr. Warfel's general insurance knowledge is also applicable to the short-term medical policy at hand, or that Mr. Warfel has adequate expertise in this area based on his experience as a professor of Health Insurance—but

Plaintiffs have asserted that Mr. Warfel is qualified in this *specific* area without providing much foundation for that assertion. (*See* Doc. 187-4 at 15 (Mr. Warfel's admission during a deposition that this case is "the first, in general, medical expense insurance case that I've worked on.")).

To the extent that Mr. Warfel intends to testify regarding "standard practices for disclosure of policy terms, handling of claims, and expectations of insureds" *specifically* with regard to short-term medical policies, counsel may voir dire Mr. Warfel at the time of trial regarding his knowledge and experience in this area. If proper foundation is laid for Mr. Warfel's qualifications, his testimony regarding short-term medical policies will be admitted to the extent that it complies with the rest of this Order and the Federal Rules of Evidence. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." (internal quotation marks and citation omitted)). If Defendants raise more particularized objections to any of Mr. Warfel's opinions proffered at trial, this Court is more than capable of handling such evidentiary issues at that time.

### 2.    "Customary Asterisk" Opinion

While the Court finds that Mr. Warfel is certainly qualified as an insurance expert *generally*, and it will allow Plaintiffs to elicit further testimony from Mr. Warfel on the stand regarding his knowledge and expertise on medical insurance policies specifically, it remains concerned that in certain instances, he fails to explain how his general knowledge, expertise, and experience is being reliably applied to the specific facts at hand. *See* Fed. R. Evid. 702(d) (stating that an expert's opinion must reflect "a reliable application of the principles and methods to the facts of the case"). Mr. Warfel contends that the insurance policy "custom and practice is to have an asterisk next to the aggregate amount of coverage . . . alerting the policyholder to the presence of internal policy limits and exclusions . . . ."

(Doc. 187-4 at 15). He then admits, however, that he has never seen a medical insurance policy with this sort of proviso. (*Id.*). Instead, as examples of the kind of "asterisk" proviso he is speaking of, Mr. Warfel states that, "for example, if an advertisement is run in a newspaper on universal life insurance and it has a big 7.3 percent on the top of the page, there will be an asterisk and, at the bottom of the page, a statement to the effect that interest rates credited on the reserve are based on the current market rate; in other words, alerting the policyholder that the 7.3 percent is not guaranteed." (*Id.*). The comparison, however, is apples to oranges—Mr. Warfel does not explain how the standards and practices for a life insurance newspaper advertisement are the same as the standards and practices for a medical insurance policy or policy application. (*Id.*). And he does not cite any other examples of "asterisk" provisos in any other insurance policies or policy applications, medical or otherwise, which leaves this Court (and would leave a jury) in the dark about how he has determined that it is a customary practice. *See* Fed. R. Evid. 702, advisory committee's note to 2000 amendments ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" (citation omitted)). None of Mr. Warfel's expert reports shed light on this issue: Mr. Warfel states that "a simple asterisk adjacent to the $1,000,000 maximum benefit per coverage period, along with an explanation at the bottom of the Enrollment Application simply stating that the medical expense coverage is subject to the application of numerous internal policy limits . . ., is *required* to alert the applicant that he/she is in fact buying a STM Plan as opposed to a comprehensive, major medical expense insurance plan." (Doc. 187-3 at 5 (emphasis added)). Mr. Warfel provides no explanation, citation, or basis for his conclusion that such an asterisk and explanation are "required." *Cf. In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 964 (D. Ariz. 2007) (noting that an expert not only reviewed documents relevant to the case at hand, but "also cited references in his expert report to support his opinion.").

23

The Court has a gatekeeping duty under *Daubert* and its progeny to ensure that expert testimony will assist the trier of fact. *See, e.g.*, *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986) ("The general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony." (citation omitted)). Mr. Warfel has not—despite multiple opportunities—presented any facts, data, or basis for his "customary asterisk" opinion. At the same time, this Court recognizes that "[r]eliability of expert opinions about industry standards 'depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it.'" *Spearman Corp. v. Boeing Co.*, No. C20-13RSM, 2022 U.S. Dist. LEXIS 185703, at *10 (W.D. Wash. Oct. 11, 2022) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)). To that end, Plaintiffs' counsel should voir dire Mr. Warfel at the time of trial regarding the foundation for his "customary asterisk" opinion to establish that such opinion is not based "solely on subjective belief." *Id.* However, once that basic foundation is laid, this Court believes that the most appropriate avenue for Defendant to attack Mr. Warfel's "customary asterisk" opinion is on cross-examination. *See id.* ("[A]ny disputes as to the lack of [the expert's] textual authority for his opinions on industry standards go the weight, not the admissibility, of his testimony. Plaintiff is more than free to attack [the expert's] opinion on cross-examination." (citation omitted)).

### 3.    Bad Faith Opinions

While Mr. Warfel's proposed testimony related to Plaintiff's claim for Breach of Contract of a short-term medical policy is on more tenuous ground, the Court is satisfied that Mr. Warfel has established his expertise as to bad faith claims in the insurance industry. (*See generally* Doc. 230-1). As discussed below, Mr. Warfel may not offer any opinions in the form of improper legal conclusions (e.g., "Defendant acted in bad faith"); however, he may testify as to the application of insurance industry standards to claims processing. *See Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1161 (D. Ariz. 2014) ("Both Arizona law and Ninth Circuit law recognize that experts in the area of insurance claim handling are proper, that they may testify regarding the application of industry standards

to claim handling, and that they may refer to legal precedent to the extent necessary to explain the facts of their opinions.").

### 4. Legal Conclusions

Defendants also request that Mr. Warfel's testimony should be excluded "to the extent it amounts to or includes opinions about issues of law." (Doc. 187 at 13). While experts may provide testimony concerning an ultimate issue to be decided by the trier of fact, Fed. R. Evid. 704(a), an expert cannot give an opinion as to his or her bare legal conclusions. *See, e.g.*, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination."); *Corrales-Gonzalez v. Speed Auto Wholesalers LLC*, No. CV-20-02023-PHX-SPL, 2022 WL 7710514, at *3 (D. Ariz. Aug. 24, 2022) ("[The expert] may not testify as to whether, in his opinion, Defendants here violated the laws at issue.").

Certain opinions contained within Mr. Warfel's expert report certainly constitute inadmissible legal conclusions, such as his assertion that Defendant "clearly breached the Entire Contract." (Doc. 187-1 at 12). In many ways, the report toes the line between expert opinion and impermissible legal advocacy, and this Court would "caution counsel to be exceedingly careful that [Mr. Warfel's] testimony does not tread even slightly on this Court's exclusive role in determining, and instructing the jury with regard to, the applicable law." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, No. 4:10-CV-800, 2012 WL 12929813, at *4 (M.D. Pa. July 23, 2012). While Mr. Warfel may testify, for example, that Defendant has deviated from industry standards, he may not testify as to a legal conclusion that Defendant acted in bad faith. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("While [the expert witness]'s testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, [the witness] never testified that he had reached a legal conclusion that Defendants actually

acted in bad faith (i.e., an ultimate issue of law)."). Should Plaintiffs run afoul of this edict, the Court is certain that Defendant will be more than eager to raise appropriate objections at trial.

In conclusion, this *Daubert* motion will be granted in part and denied in part as outlined above. Defendant may certainly raise more particularized objections to any improper testimony that arises during the course of trial—for example, should Mr. Warfel attempt to improperly speculate as to "Mrs. Cawley's impressions or beliefs," (Doc. 187 at 17), Defendant may raise an objection if such an issue arises. *See Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, 562 F. Supp. 3d 18, 23 (D. Ariz. 2021) ("An expert's opinions may not be premised on 'subjective belief or unsupported speculation.'" (quoting *Daubert*, 509 U.S. at 590)). However, assuming Plaintiffs' counsel lays proper foundation for Mr. Warfel's medical insurance expertise, his opinions are best challenged via cross-examination, not exclusion.

### C. Motion to Exclude Testimony of Plaintiffs' Expert Witness Mark McKinnon

Defendant also moves for the exclusion of Plaintiffs' damages expert, Mark McKinnon,[2] on the basis that (1) his methodology for calculating damages is unreliable and speculative, (2) he is not qualified to offer business valuation opinions, and (3) his opinions are unduly prejudicial under Rule 403. (Doc. 188 at 7–14). Mark McKinnon is proffered by Plaintiffs to testify regarding the "present day value of economic damages" based on Plaintiffs' alleged loss of a franchised B+B Store they owned a 40% interest in. (Doc. 231 at 1–2). His report contends that "the B+B Store would have a present value revenue stream of $1,222,750 through 2028 if the Plaintiffs would have retained the store for 10 years," and that if Plaintiffs had followed through on purchasing a second store, "that second franchise would have had a revenue stream of $1,209,899." (Doc. 188 at 4).

Defendant argues that Mr. McKinnon's methodology is flawed because (1) it relies

---

[2] Plaintiffs note that Defendant incorrectly named Mr. McKinnon as Thomas, rather than Mark, McKinnon. (Doc. 231 at 1 n.1).

on data from stores in operation for at least seven years, where Plaintiffs' store was in operation for only 18 months, (2) it relies on data from top-performing stores, and (3) it ignores the facts that Plaintiffs owned only 40% of the store. (*Id.* at 7–8). Defendant then argues more broadly that Mr. McKinnon's opinions should be excluded because he "does not have any business valuation expertise," "doesn't hold any certifications related to business valuations," and "doesn't have any specialized training or knowledge in business valuations." (*Id.* at 10).

However, Plaintiffs contend that "Mr. McKinnon was not asked to perform, and did not perform, a business valuation. Instead, Mr. McKinnon did what economic damage experts regularly do—calculate present day value of economic damages based upon information provided to them about the scope of the loss." (Doc. 231 at 1). As Plaintiffs explain, rather than doing a business valuation, "Mr. McKinnon used a net profit figure known as 'EBIDTA' (Earnings Before Interest, Taxes, Depreciation, and Amortization) already calculated by the Business Plus Bulbs ('B+B') parent company in a B+B Franchise Disclosure Document ('B+B Franchise Disclosure Document')," then "used this existing EBIDTA figure to do his own calculations to determine the present day value of what the store would have earned over ten years—in other words, its lost profit over a period of 10 years." (*Id.* at 2–3).

The Court finds that Mr. McKinnon is certainly adequately qualified as an economist: he has a Bachelor of Science in Mathematics, a Master of Business Administration, and a Master of Science in Mathematics. (Doc. 188-1 at 8). He has been employed as an economics consultant since 2008, is a member of both the National Association of Forensic Economics and the American Academy of Economic and Financial Experts, and has testified in over 70 cases. (*Id.* at 8–9, 13–14); *see, e.g.*, *Dubey v. Concentric Healthcare Sols. LLC*, No. CV-22-02044-PHX-DJH, 2025 WL 1663836, at *5 (D. Ariz. June 12, 2025) ("The Court finds that [the expert witness] is qualified to testify as an economics expert through his experience and through his education."). Likewise, the Court finds that his methodologies are reliable and relevant to this case. *Cf. In re Apollo*,

27

527 F. Supp. 2d at 963. Mr. McKinnon thoroughly explains the calculations he did to form the basis of his opinions. (*See* Doc. 188-1 at 2–4). To the extent that Defendant contests the strength of the underlying data Mr. McKinnon chose when making those calculations, Defendant is certainly entitled to question Mr. McKinnon on the stand regarding why he may have chosen to use certain data over other potentially available data, but Defendant's objections do not warrant wholesale exclusion of Mr. McKinnon's testimony. *See, e.g.*, *In re Apollo*, 527 F. Supp. 2d at 963 ("Defendants' specific objections concern matters that go to the weight of the evidence and are appropriately addressed on cross-examination.").

Accordingly, Defendant's *Daubert* motion to exclude the opinions and testimony of Mark McKinnon will be denied.

## III.    CONCLUSION

In sum, having carefully considered the parties' briefing and oral arguments at the Final Pretrial Conference,

**IT IS ORDERED** as follows:

1.     Plaintiffs' Motion in Limine No. 1 (Doc. 171) is **granted**. Defendant is precluded from introducing evidence, testimony, or inquiries regarding the portion of Armpriester's October 5, 2021, letter referring to Covid (at AZDOI_000029-31) and AZDIFI's response (at CAWLEY000582-586 and AZDOI_000073-74) at trial.

2.     Plaintiffs' Motion in Limine No. 2 (Doc. 172) is **denied**.

3.     Plaintiffs' Motion in Limine No. 4 (Doc. 178) is **granted in part and denied in part**. Plaintiffs' motion is denied to the extend it seeks to exclude *any* evidence or testimony about the alleged approval of the subject health insurance forms. However, because Mr. Armpriester lacks personal knowledge regarding those approvals, he is precluded from testifying as to what he knows based only on what the company's regulatory attorney told him. He may still testify more generally on his knowledge of the general approval process based on his personal knowledge and experience in the

industry.

4.      Plaintiffs' Motion in Limine No. 5 (Doc. 202) is **denied**.

5.      Plaintiffs' Motion in Limine No. 6 (Doc. 180) is **granted**. Neither party's expert witnesses may opine on issues of law, including whether Ms. Vaval and/or Mr. Bowen were agents of American Financial.

6.      Plaintiffs' Motion in Limine No. 7 (Doc. 181) is **granted**. Neither party's expert witnesses may offer improper opinions about the reasonableness of Plaintiffs' expectations regarding insurance coverage.

7.      Plaintiffs' Motion in Limine No. 8 (Doc. 184) is **granted**. Neither party's expert witnesses may opine on the reasonableness of the Cawleys' actions when reading/reviewing the STMP.

8.      Defendant's Motion in Limine No. 1 (Doc. 166) is **denied**.

9.      Defendant's Motion in Limine No. 2 (Doc. 167) is **denied**.

10.     Defendant's Motion in Limine No. 3 (Doc. 168) is **denied**.

11.     Defendant's Motion in Limine No. 5 (Doc. 170) is **granted**. Plaintiffs are precluded from offering at trial the AdvantHealth STM brochure (Joint Pretrial Statement, Proposed Exhibit 127), the Thrive Health STM brochure (Joint Pretrial Statement, Proposed Exhibit 128), and the document referred to as "AFS STM Brochure – 0822 – Red" and produced as CAWLEY000666-674 (Joint Pretrial Statement, Proposed Exhibit 12).

12.     Defendant's Motion in Limine No. 6 (Doc. 173) is **granted**. Plaintiffs may not introduce at trial any evidence or testimony about the "Traditional Plan."

13.     Defendant's Motion in Limine No. 7 (Doc. 174) is **granted**. Plaintiffs may not introduce third-party reviews of IBA from the Better Business Bureau into evidence at trial.

14.     Defendant's Motion in Limine No. 8 (Doc. 175) is **denied**.

15.     Defendant's Motion in Limine No. 9 (Doc. 176) is **denied**.

16.     Defendant's Motion in Limine No. 10 (Doc. 182) is **granted in part and**

**denied in part**. If Plaintiffs properly authenticate and lay foundation for the document, they may introduce AFS STM SCRIPT 416 (CAWLEY000974-980) only for the limited purpose of demonstrating American Financial's ability to control sales agents.

17.    Defendant's Motion in Limine No. 11 (Doc. 183) is **granted**. Plaintiffs may not introduce certain documents produced as CAWLEY002336-2356 (the "DES Documents"), which includes correspondence dated January 4 and 5, 2021 related to an application for Nutrition Assistance; correspondence from DES to the Cawleys dated December 31, 2020 listing additional information needed in order for DES to decide if they were qualified; and pay stub printouts showing Mrs. Cawley's earnings from Walmart for November and December 2020.

18.    Defendant's Motion in Limine No. 12 (Doc. 190) is **granted in part and denied in part**. Plaintiffs will not be allowed to present evidence of the DIFI Order at trial. However, Plaintiffs may introduce portions of the DCI Order for the limited purpose of showing common ownership between IBA and American Financial.

19.    Defendant's Motion in Limine No. 13 (Doc. 191) is **denied**.

20.    Defendant's Motion in Limine No. 14 (Doc. 193) is **denied without prejudice** to particularized objections to specific testimony being raised at trial.

21.    Defendant's Motion in Limine No. 15 (Doc. 194) is **denied without prejudice** to particularized objections to specific testimony being raised at trial.

22.    Defendant's Motion in Limine No. 16 (Doc. 195) is **denied without prejudice** to particularized objections to specific testimony being raised at trial.

23.    Defendant's Motion to Exclude Testimony of Plaintiffs' Expert Witness

30

William Warfel (Doc. 187) is **granted in part and denied in part**. Mr. Warfel will not be permitted to offer any opinions in the form of legal conclusions. Furthermore, Plaintiffs' counsel should lay the proper foundation for Mr. Warfel's opinions regarding industry standards and customs with respect to medical insurance policies and short-term medical policies, specifically. However, to the extent Defendant seeks wholesale exclusion of Mr. Warfel's testimony, the Motion is denied. Defendant may raise particularized objections to any improper testimony at trial, and it may appropriately attack Mr. Warfel's proffered opinions on cross-examination.

24.  Defendant's Motion to Exclude Testimony of Plaintiffs' Expert Mark McKinnon (Doc. 188) is **denied**.

Dated this 2nd day of July, 2025.

Honorable Steven P. Logan
United States District Judge